IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ASSOCIATED HOME AND RV SALES, INC.,
a New Mexico corporation, d/b/a ENCHANTMENT RV,

       Plaintiff,

vs.                                      No. CIV 05-119 JB/DJS

R-VISION, INC., an Indiana corporation,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendant R-Vision, Inc.'s Motion for Summary Judgment, filed September 15, 2005 (Doc. 27); and (ii) the Plaintiff's Motion for Summary Judgment, filed October 28, 2005 (Doc. 34). The Court held a hearing on the parties' motions on December 21, 2005. The primary issue is whether New Mexico's Statute of Frauds bars a purported contract between the parties. Because there is no contract signed by the party to be charged, and no exception to the Statute of Frauds applies, the Court will grant the Defendant R-Vison's Motion for Summary Judgment and deny Plaintiff Associated Home and RV Sales, Inc.'s Motion for Summary Judgment.

## FACTUAL BACKGROUND

R-Vision manufactures recreational vehicles (RVs). Representatives of Associated Home and R-Vision attended an RV show in Louisville, Kentucky, in November 2003. See Complaint ¶ 3, at 1-2, filed February 4, 2005 (Doc. 1). At the convention, R-Vision's Regional Sales Manager, Darrell Higgins, and the Product Manager, Timothy Cunningham, met with Associated Home's agents. See Deposition of Darrell Higgins at 13:3-14:12, 23:1-2 (taken September 29, 2004)(hereinafter "Higgins

Depo."). Higgins and Cunningham discussed with Associated Home the possibility of using Associated Home as a dealer of R-Vision's RVs in Albuquerque, New Mexico. See id.

At the time of the Louisville convention, Rocky Mountain RV was R-Vision's dealer in Albuquerque. See id. Even so, Higgins and Cunningham told Associated Home that, if Associated Home was serious about becoming R-Vision's dealer, "'then we would like to pursue that option with you.'" Id. R-Vision had been concerned that Rocky Mountain was not making an effort to "represent" R-Vision's RVs and that a new dealer might be necessary. Id. at 13:3-14:12.

On the Monday after the convention, Higgins called Associated Home and said: "'It was nice to meet you at the show. I hope that you're – I want to know if you're still serious about our product and representing our product.'" Id. at 16:20-25. Associated Home responded that it was interested, but that it needed a couple of weeks to sort through issues on its end about any new relationship. See id. at 17:1-4.

That same week, Higgins contacted Rocky Mountain and told it that, if Rocky Mountain did not make better efforts to represent R-Vision's product, then R-Vision would find another dealer in Albuquerque. See id. at 18:3-12. Rocky Mountain stated that it did not know what it was going to do. See id. at 18:16-18. Higgins closed out the conversation by informing Rocky Mountain that R-Vision would "'pursue somebody else.'" Id. at 18:19-20. Higgins let Rocky Mountain know that R-Vision was pursuing Associated Home in particular. See id. at 19:2-10.

Around January 5, 2004, R-Vision faxed to Associated Home an application to become R-Vision's dealer in Albuquerque. See id. at 21:7-8. Associated Home faxed in return a completed dealer application form at the beginning of February 2004. See id. at 21:24-25. The cover sheet for the returned application stated: "Here is the paperwork[.] Hope to hear from you soon." Cover

Sheet for Dealer Application Fax at 1 (dated February 4, 2004).

Higgins then called Associated Home to explain that Associated Home needed to submit orders for RVs as part of the dealer application.  See id. at 22:10-13.  In response to that telephone call, Associated Home submitted orders for four RV units.  See id. at 22:15-17.  On this cover sheet, Associated Home stated: "Here are the orders[.]  We didn't pick colors because we need brochures + floor plan books to pick."  Cover Sheet for RV Orders at 1 (dated February 4, 2004).  After receiving the orders, Higgins and Cunningham turned them in to the sales coordinator.  See id. at 22:22-25.

At first, Associated Home did not order four Class A vehicles, as R-Vision wished.  See id. at 23:11-17.  When Higgins called Associated Home about this issue, Associated Home explained that it was new to the business and that it wanted to try to sell two Condor As and two Trail-Lite Bs at first; if those sold well, then Associated Home promised to order more.  See id. at 23:18-24.  Higgins told Associated Home: "'Fine.  That's good enough.  We'll do it that way.'"  Id. at 23:25-24:2.

Higgins then contacted Rocky Mountain to tell it that R-Vision had "another dealer in your area that wants the product, that has ordered product and is going to represent the product."  Id. at 24:22-25.  Rocky Mountain's representative expressed that it was still the dealer and that it wanted to remain R-Vision's dealer, but it would not commit at that time to ordering more RVs.  See id. at 25:1-12.  At the representative's suggestion, Higgins attempted, for several weeks, to get in touch with Rocky Mountain's president.  See id. at 25:23-26:8.  Finally, Rocky Mountain's owner called Higgins, and Higgins told him that Rocky Mountain would no longer be R-Vision's dealer in Albuquerque.  See id. at 30:22-14.  At that point, Rocky Mountain's owner informed Higgins that,

under New Mexico law, R-Vision had to give Rocky Mountain ninety days' written notice of its action, and that Rocky Mountain could still be the dealer by placing orders before the expiration of the ninety-day period.  See id. at 31:20-32:4.  Higgins then ended the conversation, promising to get back with Rocky Mountain's owner the following week.  See id. at 32:7-9.  Thereafter, Rocky Mountain ordered more RVs.  See id. at 32:21-22.

By this point, Higgins had already told Associated Home that it would be the dealer.  See id. at 78:25-79:11.  Higgins told Associated Home about the ninety-day issue with Rocky Mountain, but told Associated Home that they would work it out and that Associated Home would be the dealer. See id. at 79:12-16.

Higgins attempted to contact Rocky Mountain again but could not get in touch with its owner.  See id. at 33:8-13.  Before Higgins could try to follow up, R-Vision laid him off.  See id. at 33:15-21.  Because of Higgins' termination, Higgins did not inform Associated Home that Rocky Mountain had ordered more RVs.  See id. at 34:3-9.  Associated Home did not receive any RVs from R-Vision.  See Complaint ¶ 7, at 2.

## PROCEDURAL BACKGROUND

On January 5, 2005, Associated Home filed a Complaint in the Second Judicial District Court of New Mexico.  The Complaint charged that R-Vision breached a contract with Associated Home by not delivering four RVs.  See id. ¶¶ 8-10, at 2-3.  Associated Home also stated an estoppel claim against R-Vision, because R-Vision allegedly made representations to Associated Home, on which Associated Home relied to its detriment.  See id. ¶¶ 11-14, at 3-4.  On February 4, 2005, R-Vision removed this case to the United States District Court for the District of New Mexico on the basis of diversity of citizenship.  See Notice of Removal at 1-3, filed February 4, 2005 (Doc. 1).

-4-

R-Vision filed a motion for summary judgment on September 15, 2005. R-Vision maintains that the Statute of Frauds bars any contract between the parties because there is no writing that R-Vision signed, and no exception applies. See Defendant R-Vision, Inc.'s Memorandum in Support of Its Motion for Summary Judgment ("Defendant Summary Judgment Memorandum") at 3, filed September 15, 2005 (Doc. 28).

In response, Associated Home argues that the order forms that it submitted satisfy the Statute of Frauds' requirement of a writing signed by the party to be charged. See Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiff Response") at 5, filed October 28, 2005 (Doc. 36). Associated Home also represents that the order forms confirm the contract and thus satisfy the merchants exception to the Statute of Frauds, because R-Vision did not respond within ten days. See id. at 6-7. Associated Home further contends that the RVs it ordered had special characteristics rendering them unsuitable for sale in the ordinary course. See id. at 7. Finally, Associated Home explains that promissory estoppel – present here because Associated Home allegedly relied on an oral promise by R-Vision to Associated Home's detriment – avoids the Statute of Frauds in this case. See id. at 7-8.

Associated Home filed its own summary-judgment motion on October 28, 2005 and incorporated therein its arguments from its Response to R-Vision's Motion for Summary Judgment. See Plaintiff's Motion for Summary Judgment at 2. Similarly, R-Vision incorporated, as its Response, its arguments in its Motion for Summary Judgment. See Response to Plaintiff's Cross-Motion for Summary Judgment at 1, filed November 28, 2005 (Doc. 37).

The Court held a hearing on these motions on December 21, 2005. The parties agreed that the cross-motions for summary judgment concerned only Count I of the Complaint, which alleged

breach of contract.  <u>See</u> Transcript of Hearing at 6:25-7:5, 10:13-17 (taken December 21, 2005).[1]

Associated Home stated that it does not believe there are any genuine issues for the Court to resolve,

not even on whether Higgins had the authority to enter into a contract. <u>See</u> <u>id.</u> at 8:21-9:1, 10:23-25.

## STANDARDS FOR DETERMINING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(c).  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The opposing party may not rest

upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there

is a genuine issue for trial.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)(citing

Fed. R. Civ. P. 56(e)).  An issue of fact is "genuine" if the evidence is significantly probative or more

than merely colorable such that a jury could reasonably return a verdict for the non-moving party.

<u>Id.</u> at 249-50 (citations omitted).  Mere assertions or conjecture as to factual disputes are not enough

to survive summary judgment.  <u>See</u> <u>Branson v. Price River Coal Co.</u>, 853 F.2d 768, 771-72 (10th Cir.

1988).  The court may only consider admissible evidence when ruling on a motion for summary

judgment.  <u>See</u> <u>World of Sleep, Inc. v. La-Z-Boy Chair, Co.</u>, 756 F.2d 1467, 1474 (10th Cir.

1985)(citing Fed. R. Civ. P. 56(e)).

If a defendant seeks summary judgment, it has an "initial burden to show that there is an

absence of evidence to support the nonmoving party's case." <u>Munoz v. St. Mary-Corwin Hosp.</u>, 221

F.3d 1160, 1164 (10th Cir. 2000)(quoting <u>Thomas v. IBM</u>, 48 F.3d 478, 484 (10th Cir.

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

1995))(internal quotations omitted).  Upon meeting that burden, the plaintiff must "identify specific facts that show the existence of a genuine issue of material fact." Id. (citations and internal quotations omitted).  "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." Id. (citations and internal quotations omitted).  The non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. at 324 (internal quotations omitted).

## NEW MEXICO LAW ON CONTRACT FORMATION

New Mexico courts require that contracts "must be factually supported by an offer, an acceptance, consideration, and mutual assent." Garcia v. Middle Rio Grande Conservancy Dist., 121 N.M. 728, 731, 918 P.2d 7, 10 (1996)(quoting Hartbarger v. Frank Paxton Co., 115 N.M. 665, 669, 857 P.2d 776, 780 (1993))(internal quotations omitted).  Both parties to the agreement must express mutual assent to the contract, with acceptance of the offer manifested by "unconditional agreement to all of the terms of the offer and an intention to be bound thereby." Stevenson v. Louis Dreyfus Corp., 112 N.M. 97, 99, 811 P.2d 1308, 1310 (1991)(citing Tatsch v. Hamilton-Erickson Mfg. Co., 76 N.M. 729, 733, 418 P.2d 187, 189 (1966)).  To be a valid acceptance, there must be "made manifest a definite intention to accept the offer and every part thereof and be presently bound thereby without material reservations or conditions." Tatsch v. Hamilton-Erickson Mfg. Co., 76 N.M. at 733, 418 P.2d at 189 (internal quotations and citations omitted).  "In a commercial transaction, during preliminary negotiations, there can be no conclusive bargain." State v. Bankert, 117 N.M. 614, 620, 875 P.2d 370, 376 (1994)(citing Restatement (Second) of Contracts § 26).

According to Restatement (Second) of Contracts § 26, which the Supreme Court of New Mexico cited in State v. Bankert, "[a] manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent."   A preliminary negotiation is where a party "intends to make a bargain in the future, but only if he makes some further manifestation of assent."   Restatement (Second) of Contracts § 26, Comment A. Indeed, "it is common for one party to request the other to make an offer."   Id. § 26, Comment D.

## NEW MEXICO'S STATUTE OF FRAUDS

New Mexico's Statute of Frauds provides that

> a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

N.M.S.A. 1978 § 55-2-201(1).  Under New Mexico law, there are several exceptions to the Statute of Frauds.  The merchants exception allows a party to enforce an oral contract

> [b]etween merchants if within a reasonable time a writing in conformation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, . . . unless written notice of objection to its contents is given within ten days after it is received.

Id. § 55-2-201(2).  Otherwise, New Mexico recognizes that

> [a] contract which does not satisfy the [Statute of Frauds requirements] but which is valid in other respects is enforceable:
>
> (a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

(c) with respect to goods for which payment has been made and accepted or which have been received and accepted (Section 2-606 [55-2-606 NMSA 1978]).

Id. § 55-2-201(3).

New Mexico defines "signed" as including "any symbol executed or adopted by a party with present intention to authenticate a writing."  Id. § 55-1-201(b)(37).  Explaining the rationale for the definition of signed, the Official Comment to § 55-1-201 stated:

The inclusion of authentication in the definition of "signed" is to make clear that as the term is used in this Act a complete signature is not necessary. Authentication may be printed, stamped or written; it may be by initials or by thumbprint. It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead. No catalog of possible authentications can be complete and the court must use common sense and commercial experience in passing upon these matters. *The question always is whether the symbol was executed or adopted by the party with present intention to authenticate the writing.*

(emphasis added).  Also, the Restatement (Second) of Contracts, to which New Mexico courts frequently look to resolve issues of contract law, see, e.g., Berlangieri v. Running Elk Corp., 134 N.M. 341, 347, 76 P.3d 1098, 1104 (2003)(looking to the Restatement (Second) of Contracts for guidance); Strata Prod. Co. v. Mercury Exploration Co., 121 N.M. 622, 627, 916 P.2d 822, 827 (1996)(same); Crow v. Capitol Bankers Life Ins. Co., 119 N.M. 452, 456, 891 P.2d 1206, 1210 (1995)(same), defines signature as "any symbol made or adopted with an intention, actual or apparent, to authenticate the writing as that of the signer,"  Restatement (Second) of Contracts § 134.

Although New Mexico courts have not interpreted the merchants exception, the Official Comment to § 55-2-201 indicates that it applies only when an oral contract, independent of the writing, already exists.  As Official Comment 3 explains: "The only effect [of satisfying the merchants'

exception], however, is to take away from the party who fails to answer the defense of the Statute of Frauds; *the burden of persuading the trier of fact that a contract was in fact made orally prior to the written confirmation is unaffected*" (emphasis added).  Under New Mexico's Statute of Frauds, then, the proponent of the contract must establish that an oral contract already exists which the writing merely confirms.

Other courts that have examined the same exception, adopted in other jurisdictions from the Uniform Commercial Code ("UCC"), have arrived at the same conclusion.  The United States Court of Appeals for the Eighth Circuit determined, in a case involving the merchants exception, that "[w]ithout more, a binding contract cannot be created by simply sending documents to a party who then does not respond." Lebanon Chem. Corp. v. United Farmers Plant Food, Inc., 179 F.3d 1095, 1101-02 (8th Cir. 1999).  The Eighth Circuit required the proponent of the contract "to establish the existence of the underlying contract evidenced by the writing, and the terms of that agreement." Id. at 1102 (citation omitted).  Likewise, the United States Court of Appeals for the Fourth Circuit requires that, for this provision to excuse compliance with the statute of frauds, "[the contract's proponent] *would have to allege that a contract existed* and that it sent the purchase order in confirmation of the contract within a reasonable time thereafter." Audio Visual Assocs. v. Sharp Elecs. Corp., 210 F.3d 254, 260-61 (4th Cir. 2000)(citing R.S. Bennett & Co. v. Economy Mechanical Indus., Inc., 606 F.2d 182, 185-86 (7th Cir. 1979))(emphasis added).  Where the writing seeks to create a contract, rather than confirm one already in existence, the writing does not satisfy the Statute of Frauds.  See id. at 261.

Similarly, the United States Court of Appeals for the Seventh Circuit has concluded that the merchants exception does not apply when the parties did not make an underlying contract before the

confirmatory writing.  See Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V., 28 F.3d

572, 586 (7th Cir. 1994)("Moreover, neither order is a 'writing in confirmation of a contract' that

had been made previous to the order; thus, the merchants' exception does not apply." (citations

omitted)).  In explaining the workings of the merchants exception, the United States Court of Appeals

for the Second Circuit set forth the following hypothetical:

> In other words, if merchants A and B *orally agree* to a sale of goods for $500 or more, and merchant A within a reasonable time sends merchant B *a written confirmation of the contract*, Merchant B would lose the Statute of Frauds defense unless Merchant B gives a written objection within ten days after receiving the *confirmation*.

American Plastic Equipment, Inc. v. CBS, Inc., 886 F.2d 521, 527 (2d Cir. 1989)(emphases added).

The Second Circuit's hypothetical indicates that it expects an oral contract to precede the

confirmatory writing under the merchants exception.

While the New Mexico courts have not demarcated the outer limits of the agent admission

exception, the Official Comment to § 55-2-201 indicates that the exception applies only to statements

made by a person: (i) to a court in a pleading, testimony, or otherwise; and (ii) who is an agent of the

party at the time he made the statement to a court.  Official Comment 7 describes the inner workings

of the agent admission exception:

> If the making of a contract is *admitted in court, either in a written pleading, by stipulation or by oral statement before the court*, no additional writing is necessary for protection against fraud. Under this section it is no longer possible to admit the contract *in court* and still treat the Statute as a defense.

(emphases added).  The Official Comment makes explicit that the drafters of the agent admission

exception envisioned it applying only to statements made to a court.

Other courts have interpreted this exception, also as adopted in other jurisdictions from the

-11-

Uniform Commercial Code ("UCC"), to apply in the same manner.  For example, the Eighth Circuit affirmed a district court's holding that, "[f]or [the agent admission exception] to apply, a 'party' must admit under oath that a contract was made."  Essco Geometric v. Harvard Indus., 46 F.3d 718, 729 (8th Cir. 1995).  The United States Court of Appeals for the Third Circuit articulated the purpose of the exception as allowing a plaintiff, *during the course of litigation*, to seek an admission by a defendant that an oral contract exists.  See ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 861 (3d Cir. 1994)("[The agent admission exception] gives a plaintiff the right to ask the defendant to admit the fact that an oral contract was made, and thus precludes the granting of a Rule 12(b)(6) motion on statute of frauds grounds in most cases because to do so would deprive the plaintiff of any opportunity to get such an admission.").  The Third Circuit thereby recognized that an admission has relevance under the exception only when it is made by one who is an agent when making the admission before a court.  See id.  The Second Circuit also recognized the agent admission exception where the *current* chief executive officer of a company admitted the existence of a contract *in a deposition*.  See Pentech Int'l, Inc. v. Wall Street Clearing Co., 983 F.2d 441, 447 (2d Cir. 1993).

Two New Mexico cases that did not rule directly on this issue also support the conclusion that, for a statement to qualify as an agent admission, the admittee must be an agent of the party at the time he makes the admission to a court.  In Herrera v. Herrera, 126 N.M. 705, 974 P.2d 675 (Ct. App. 1999), the New Mexico Court of Appeals explained the rationale for the agent admission exception: "We think it is clear that a party may not plead the statute of frauds as a defense while at the same time *admit in the pleadings or otherwise before the court* the making of the contract as alleged by the plaintiff."  Id. at 709, 974 P.2d at 679 (emphasis added).  The Herrera court concluded that a contract existed based on one party's admissions in his *testimony* concerning the contract.  See

id. at 710, 974 P.2d at 680.  In a case dealing with New Mexico's paternity statute, the New Mexico

Court of Appeals summarized the agent admission exception: "Uniform Commercial Code statute of

frauds can be satisfied by *a pleading*."  Lane v. Lane, 121 N.M. 414, 420, 912 P.2d 290, 296 (Ct.

App. 1996)(emphasis added).

The Supreme Court of New Mexico has ruled that the Statute of Frauds is not available as

a defense when a plaintiff satisfies the elements of promissory estoppel.  See Eavenson v. Lewis

Means, Inc., 105 N.M. 161, 162-63, 730 P.2d 464, 465-66 (1986), overruled on other grounds by

Strata Prod. Co. v. Mercury Exploration Co., 121 N.M. at 622, 916 P.2d at 822.  The elements of

promissory estoppel are: (i) "[a]n actual promise must have been made which in fact induced the

promisee's action or forbearance"; (ii) "[t]he promisee's reliance on the promise must have been

reasonable"; (iii) "[t]he promisee's action or forbearance must have amounted to a substantial change

in position"; (iv) "[t]he promisee's action or forbearance must have been actually foreseen or

reasonably foreseeable to the promisor when making the promise"; and (v) "enforcement of the

promise is required to prevent injustice."  Strata Prod. Co. v. Mercury Exploration Co., 121 N.M.

at 628, 916 P.2d at 828 (citations omitted).

## ANALYSIS

The Court will grant R-Vision's Motion for Summary Judgment, because R-Vision has shown

that there are no genuine issues of material fact on Associated Home's breach of contract claim.  R-

Vision has demonstrated that Associated Home has not satisfied the Statute of Frauds, because there

is not a sufficient writing signed by R-Vision.  Furthermore, R-Vision has established that no

exception to the Statute of Frauds applies.

Associated Home alleges that it entered into a contract with R-Vision to purchase four RVs,

which R-Vision breached by failing to deliver the vehicles on the agreed-upon date.  See Complaint ¶¶ 3-10, at 1-3.  Under New Mexico's Statute of Frauds, a contract for the sale of goods for the price of $500 or more is unenforceable unless there is a writing: (i) sufficient to indicate that a contract for sale has been made between the parties; and (ii) signed by the party against whom enforcement is sought or by his authorized agent or broker.  See N.M.S.A. 1978 § 55-2-201(1).  As an initial matter, the Court notes that the alleged contract falls under § 55-2-201, because it is a contract for the sale of goods, four RVs.  The alleged contract is also for the price of $500 or more because the total value of the four RVs is at least $228,796.[2]  As a contract for the sale of goods for more than $500, the alleged contract is unenforceable unless there is a sufficient writing signed by R-Vision, the party against whom Associated Home is seeking to enforce the alleged contract.

The only potential writings highlighted by the parties are the four order forms and the dealer application.  See generally Defendant Summary Judgment Memorandum at 2; Plaintiff Response at 5-6.  As R-Vision points out, none of these documents are signed by R-Vision or one of its agents. See Dealer Application at 1-2 (executed February 4, 2004); RV Orders at 1-4 (executed February 4, 2004).  The only signatures on the documents, appearing on the cover sheets to the faxed order forms and dealer application, belong to Mike Grier, Jr., the Sales Manager for *Associated Home*.  See Cover Sheet for RV Orders at 1; Cover Sheet for Dealer Application Fax at 1; Dealer Application at 2.

Associated Home contends that the order forms and the dealer application satisfy the Statute of Frauds because they identify R-Vision as the seller.  See Plaintiff Response at 6.  By this,

---

[2] The Court arrived at this total by adding the figures for the models circled on each of the four order forms: $68,749 (Model 1351) + $67,049 (Model 1340) + $44,599 (Model 281) + $48,399 (Model 321) = $228,796.

Associated Home appears to argue that R-Vision's pre-printed logos on the order forms that Associated Home submitted qualify as R-Vision's signature on the documents.  See Plaintiff's Reply at 2; Defendant's Reply at 3; RV Orders at 1-4; Dealer Application at 1-2.  While the Official Comment to § 55-1-201 recognizes that non-traditional forms of identification, including initials, thumbprints, billheads, and letterheads, may satisfy the Statute of Frauds, the proper inquiry is whether R-Vision executed or adopted the symbol with present intention to authenticate the writing.  Associated Home points to no evidence that establishes that R-Vision intended to use its logos as an authentication of a contract between the parties; that the logos were printed on the order forms *before* Associated Home received them – a fact which neither party appears to dispute, see Plaintiff's Reply at 2-3; Defendant's Reply at 3 – suggests, if anything, that R-Vision did not use the logos as a stamp of approval on a subsequent contract between it and Associated Home.  Although Associated Home notes that R-Vision does not typically sign contracts with prospective customers, Associated Home concedes that R-Vision accepts offers only through an internal approval process, not through the order forms themselves.  See Plaintiff's Response at 3.

Because the purported contract between Associated Home and R-Vision falls within the Statute of Frauds, and there is no writing that R-Vision has signed, the contract must satisfy one of the exceptions to the Statute of Frauds to be enforceable.  According to the parties, four exceptions are in play in this case: the merchants exception, the agent admission exception, the specially manufactured goods exception, and promissory estoppel.  The merchants exception allows a party to enforce an oral contract between merchants if within a reasonable time a writing in conformation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, unless written notice of objection to its contents is given within ten days after it

is received.  See N.M.S.A. 1978 § 55-2-201(2).  The merchants exception requires that an oral contract, independent of the writing, already exists, which the writing merely confirms.  See Official Comment 3 to N.M.S.A. 1978 § 55-2-201; Audio Visual Assocs. v. Sharp Elecs. Corp., 210 F.3d at 260-61; Lebanon Chem. Corp. v. United Farmers Plant Food, Inc., 179 F.3d at 1101-02; Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V., 28 F.3d at 586; American Plastic Equipment, Inc. v. CBS, Inc., 886 F.2d at 527.  The proponent of the contract must still persuade the trier of fact that a contract was in fact made orally before the written confirmation.  See Official Comment 3 to N.M.S.A. 1978 § 55-2-201.

Associated Home maintains that, if the purchase orders and dealer application do not qualify as a sufficient writing under the Statute of Frauds, then they satisfy the merchants exception: Associated Home and R-Vision are merchants, the purchase orders and dealer application are in writing, R-Vision received the purchase orders and dealer application via facsimile transmission, and R-Vision did not object to the materials within ten days.  See generally Plaintiff's Response at 6-7; Plaintiff's Reply at 3-4.  The Court agrees with R-Vision that the purchase orders and dealer application do not meet the requirements of the merchants exception, because they do not confirm the existence of an underlying contract.

An offer, an acceptance, consideration, and mutual assent must factually support a contract. See  Garcia v. Middle Rio Grande Conservancy Dist., 121 N.M. at 731, 918 P.2d at 10.  Both parties to the agreement must express mutual assent to the contract, with acceptance of the offer manifested by unconditional agreement to all of the terms of the offer and an intention to be bound thereby.  See Stevenson v. Louis Dreyfus Corp., 112 N.M. at 99, 811 P.2d at 1310.  To be a valid acceptance, there must be made manifest a definite intention to accept the offer and every part thereof, and be

presently bound thereby without material reservations or conditions. See Tatsch v. Hamilton-Erickson Mfg. Co., 76 N.M. at 733, 418 P.2d at 189.

As R-Vision points out, there is no evidence in the record that the parties formed a contract – of which the purchase orders and dealer application serve as confirmations – before Associated Home sent, by facsimile transmission, the purchase orders and dealer application. The evidence reflects that the parties were negotiating between November 2003 and early 2004, but did not arrive at a contract until after Associated Home sent in the purchase orders and dealer application, at the earliest. At the Louisville convention, R-Vision told Associated Home that it would like to *pursue the option* of using Associated Home as R-Vision's dealer, indicating that the parties had not yet concluded a deal. See Higgins Depo. at 13:3-14:12 ("But I do believe that we said, 'If you're serious, then we would like to pursue that option with you.'"). The following Monday, Higgins contacted Associated Home and asked if it was "still serious" about R-Vision's products. Id. at 16:20-25. Associated Home said it was serious, but that it had "some things . . . to work out" on its end first. Id. at 17:1-4.

The parties have not brought to light any other contact between R-Vision and Associated Home before R-Vision sent, by facsimile transmission, the dealer application to Associated Home in January 2004. From these undisputed facts, the Court cannot identify anything that could be fairly characterized as an offer or acceptance by either party. Taking the facts in the light most favorable to Associated Home, the parties had engaged in preliminary negotiations as a prelude to entering into a contract; the parties were exploring the possibility of entering into a relationship, with Associated Home needing to work out some issues first, but they did not intend to conclude a bargain yet. New Mexico recognizes that there is no conclusive bargain during preliminary negotiations. See State v.

Bankert, 117 N.M. at 620, 875 P.2d at 376.

While Associated Home contends that the purchase orders and dealer application are confirmations, the purchase orders and dealer application appear to be an offer by Associated Home to enter into a contractual relationship for the sale of four RVs and for sole rights to sell RVs in the Albuquerque area.  Associated Home may also see the documents in this light, for it describes the order forms as "purchase orders which Defendant uses exclusively to invite the manufacture of goods for dealers," Plaintiff's Reply at 3; seen in this light, the pre-printed forms were invitations to Associated Home to make an offer.  This conclusion is bolstered by Associated Home's statement on its cover sheet that it *hoped* to hear from R-Vision soon, which indicates that the parties had still not reached the final stage in their pre-contractual negotiations.  See Cover Sheet for Dealer Application Fax at 1.  Higgins' statement that "[w]e'll do it that way," and his later comment that Associated Home would be the dealer, were an acceptance of Associated Home's offer.  See Higgins Depo. at 23:25-24:2; 78:25-79:11.  Associated Home presents no facts to change these perceptions, and it is the only interpretation that accords with all the evidence.  Without further facts in Associated Home's favor, there is no genuine issue that there was no contract which the purchase orders and dealer application confirmed.  Without an underlying contract, the merchants exception does not apply.

The agent admission exception provides that a contract which does not satisfy the Statute of Frauds requirements, but which is valid in other respects, is enforceable if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made.  See N.M.S.A. 1978 § 55-2-201(3).  R-Vision contends that it has not admitted – in a pleading, testimony, or otherwise in court – that it made a contract with Associated Home.  See

-18-

Affidavit of Dennis Bailey ¶ 5, at 2 (executed September 14, 2005)(hereinafter "Bailey Aff.").

In response, Associated Home points to the testimony of Cunningham and Higgins to establish that R-Vision has admitted, through its agents, that a contract existed.  See Plaintiff's Response at 7; Plaintiff's Reply at 4-5.  The only portion of Cunningham's testimony to which Associated Home cites is his statement that Cunningham never had contact with anyone in New Mexico when Higgins' predecessor as regional sales manager dealt with sales in New Mexico.  See Deposition of Timothy Cunningham at 7:7-18 (taken September 28, 2005).  Cunningham does not, however, state that R-Vision contracted with Associated Home for the sale of four RVs.  See id.  Associated Home does not cite to any other portion where Cunningham admits that R-Vision entered into a contract with Associated Home.[3]

In his deposition, Higgins testified that he told Associated Home that the order forms it had submitted were sufficient and that R-Vision would proceed based on those order forms; Higgins stated: "'Fine.  That's good enough.  We'll do it that way.'"  Higgins Depo. at 23:25-24:2.  By the time that Rocky Mountain ordered more RVs, Higgins had told Associated Home that it would be the dealer.  See id. at 79:12-16.

Associated Home contends that Higgins' testimony is an admission, by one of R-Vision's agents, that R-Vision and Associated Home had entered into a contractual relationship.  See Plaintiff's Response at 7.  While there is no New Mexico case on point, the Official Comment to § 55-2-201 indicates that the exception applies only to statements made by a person: (i) to a court in

---

[3] In its response, Associated Home states that Cunningham testified in his deposition that Associated Home's purchase orders were all that were required to manufacture the RVs.  See Plaintiff's Response at 3.  Associated Home cites only to Higgins' deposition for that fact, which does not contain such a statement by Cunningham himself, as opposed to Higgins.  See Higgins Depo. at 22-24.

a pleading, testimony, or otherwise; and (ii) who is an agent of the party at the time he made the statement to a court.  According to Official Comment 7,

> If the making of a contract is *admitted in court, either in a written pleading, by stipulation or by oral statement before the court,* no additional writing is necessary for protection against fraud. Under this section it is no longer possible to admit the contract *in court* and still treat the Statute as a defense.

(emphases added).  The Official Comment reflects a recognition that the Statute of Frauds protects parties against fraudulent claims that a contract exists, and that a party needs no protection against such fraud when *it* has admitted in court that it entered into a contract.

Precedent from the Second, Third, and Eighth Circuits, indicates that the admittee must be a party or an agent of the party at the time he makes the admission in court.  See Essco Geometric v. Harvard Indus., 46 F.3d at 729; ALA, Inc. v. CCAIR, Inc., 29 F.3d at 861; Pentech Int'l, Inc. v. Wall Street Clearing Co., 983 F.2d at 447.  Two New Mexico Court of Appeals cases signal that the Supreme Court of New Mexico would hold likewise.  See Herrera v. Herrera, 126 N.M. at 709-10, 974 P.2d at 679-80; Lane v. Lane, 121 N.M. at 420, 912 P.2d at 296.

In this case, each time Higgins declared that R-Vision had made a contract with Associated Home, one of the agent admission's requirements was missing.  When Higgins initially told Associated Home that the order forms were sufficient and that Associated Home would be the dealer, he was not making those statements in court.  When Higgins testified to the same effect in his deposition, he was no longer R-Vision's agent, because he had been laid off in 2004.  See Higgins Depo. at 33:15-21.  Higgins, as far as the Court is aware, never made these or similar statements while both R-Vision's agent and testifying in court.  To allow Higgins, who is no longer R-Vision's agent, to bind R-Vision to the alleged oral contract would undermine the purpose of the agent

-20-

admission exception, which is that a party cannot shield himself behind the Statute of Frauds while admitting that a contract exists.  Here, R-Vision has not conceded in court, through one of its agents, the existence of the contract; the agent admission exception therefore does not apply.

Turning to the specially manufactured goods exception, Associated Home contends that its contract with R-Vision falls under § 55-2-201(3)(a), which provides that a contract which does not satisfy the Statute of Frauds, but which is valid in other respects, is enforceable if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business.  Associated Home argues that the individual characteristics of the RVs that it ordered, as reflected in the specific options that Associated Home selected on the four order forms, make the RVs specially manufactured for it.  See Plaintiff's Response at 3, 7.  R-Vision submitted an affidavit by Dennis Bailey, R-Vision's Co-President, which stated that the RVs in this case "can be sold to others in the ordinary course of R-Vision's business."  Bailey Aff. ¶ 4, at 1.  Instead of providing evidence to create a genuine issue on this point – which is Associated Home's burden once R-Vision makes its initial showing, Munoz v. St. Mary-Corwin Hosp., 221 F.3d at 1164 – Associated Home calls Bailey's assertion "speculation" and not "competent evidence," Plaintiff's Response at 3, 7.  Yet Associated Home does not identify the basis of the affidavit's evidentiary insufficiency, and gives no reason to cast doubt that Bailey, as president of an RV company, would have knowledge as to which RVs can be sold in the ordinary course of an RV company's business.  Without more, Associated Home's general denial of R-Vision's evidence is not enough to survive summary judgment on this point.  See Celotex Corp. v. Catrett, 477 U.S. at 324.

Finally, Associated Home argues that promissory estoppel brings this case outside of the Statute of Frauds.  The elements of promissory estoppel are: (i) an actual promise must have been

made which in fact induced the promisee's action or forbearance; (ii) the promisee's reliance on the promise must have been reasonable; (iii) the promisee's action or forbearance must have amounted to a substantial change in position; (iv) the promisee's action or forbearance must have been actually foreseen or reasonably foreseeable to the promisor when making the promise; and (v) enforcement of the promise is required to prevent injustice. See Strata Prod. Co. v. Mercury Exploration Co., 121 N.M. at 628, 916 P.2d at 828 (citations omitted).  While Associated Home stated that "in reliance on [R-Vision's] promise [it] did not order other units from any other dealer," Associated Home cited to no evidence that it substantially changed its position in reliance on R-Vision's statements. Plaintiff's Response at 7-8.  Nor has Associated Home argued how enforcing R-Vision's alleged promise is required to prevent injustice.  See generally id.

      **IT IS ORDERED** that the Defendant R-Vision, Inc.'s Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Clayton E. Crowley
Lamb, Metzgar, Lines and Dahl, P.A.
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Christopher S. Riley
Barnes & Thornburg, LLP
Elkhart, Indiana

– and --

Nelson Franse
Meghan Dimond Stanford
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

     *Attorneys for the Defendant*